# EXHIBIT 1



# Fox Rothschild LLP
ATTORNEYS AT LAW

2700 Kelly Road, Suite 300
Warrington, PA 18976-3624
Tel 215.345.7500  Fax 215.345.7507
www.foxrothschild.com

Robert E. Goldman
Direct Dial: (215) 918-3550
Email Address: rgoldman@foxrothschild.com
File No. 52130.00001

May 25, 2007

## Via Facsimile @ 610-776-1184 and First Class Mail
Seth Weber, Assistant U.S. Attorney
U.S. Department of Justice
Eastern District of Pennsylvania
504 West Hamilton St., Suite 3701
Allentown, PA 18101

Re:     **Grand Jury Matter**

Dear Mr. Weber:

This letter confirms our telephone discussion of May 17, 2007 wherein I advised I represent John Karoly who you advised is a subject of an ongoing grand jury investigation.

Prior to the F.B.I. search of the John Karoly residence, Karoly, an attorney, was engaged in representing himself in a Will contest matter docketed at No. 2007-0197 in Northampton County Orphans Court. Mr. Karoly maintained his attorney work product, court papers and related material for that litigation at his residence when it was seized by the F.B.I. Mr. Karoly, who has health issues, frequently worked at home. We presently have a need to access these records to continue the defense of the Orphans Court matter. I am therefore requesting that we be given access to the seized records to enable us to identify to you attorney privileged material that should be immediately returned. In addition, we would identify documents that we need copies of to assist in the civil case defense. In addition, Mr. Karoly had portions of files for other clients at his residence.

Also, the F.B.I. seized material that was not authorized by the search warrant. For example, currency and photographs were seized as were records of John Karoly not specified in the warrant. I am therefore requesting the immediate return of all material, the seizure of which was not authorized in the warrant.

Anticipating that your reply may be that the seized material is not available to you until it is examined by a "taint team", I am requesting that you promptly advise me when the taint team's examination will be completed. I expect that you will have no answer for this. I am therefore offering to examine all seized material to identify to the government all material we deem privileged or seized without authorization. This would move your investigation along since it would immediately make available to

A Pennsylvania Limited Liability Partnership

California        Delaware        Florida        Nevada        New Jersey        New York        Pennsylvania



Fox Rothschild LLP
ATTORNEYS AT LAW

Seth Weber, U.S. Attorney
May 25, 2007
Page 2

you the bulk of the material that I would expect that I would find to not be privileged. The smaller amount of "privileged" material could then be examined by your taint team for their opinion.

It is my hope and expectation that I can work with the government to speed the investigative process along, return privileged material to my client and recover items not authorized to be seized. It is my belief that this suggested course is preferable to both parties to litigation to recover privileged material and to gain access necessary to defend the civil case.

Since time is of the essence, please reply to me by next week.

Respectfully,

Robert E. Goldman

REG:cb

# EXHIBIT 2



# Fox Rothschild LLP
ATTORNEYS AT LAW

2700 Kelly Road, Suite 300
Warrington, PA 18976-3624
Tel 215.345.7500  Fax 215.345.7507
www.foxrothschild.com

Robert E. Goldman
Direct Dial:  (215) 918-3550
Email Address:  rgoldman@foxrothschild.com
File No. 52130.00001

May 28, 2008

## Via Facsimile @ 215-861-8559 and First Class Mail
Seth Weber, Assistant U.S. Attorney
U.S. Department of Justice
Eastern District of Pennsylvania
504 West Hamilton St., Suite 3707
Allentown, PA 18101

**Re:**   **Grand Jury Subpoena to John P. Karoly**

Dear Mr. Weber:

I am in receipt of the grand jury subpoena issued to my client, John P. Karoly, for the production of certain records.

This letter is to advise that Mr. Karoly, a target of the federal grand jury investigation, will exercise his Fifth Amendment rights in regards to the production of these documents.

Preliminarily, I note that the subpoena is drafted in extremely broad terms.  It calls for the production of "all documents *characterized* by John P. Karoly, Jr., *as "important papers"* including but not limited to, all papers contained in the box *allegedly* stored at the storage facility owned by George Pollock on or about February 20, 2007 which were marked "Karoly Family" or "Karoly Personal" or other such terms, that were given to John P. Karoly between January 2006 and February 2007." (emphasis added).

Requiring Mr. Karoly to produce these records would constitute personal testimony concerning the documents and would be protected by the privilege against self-incrimination.

First, you are seeking to compel a target to produce all documents a target "characterized" as "important papers."  Clearly, this subpoena would require John Karoly to testify through the production of records as to what documents Karoly has "characterized" as important papers.  Requiring my client to produce these records would therefore be testimonial in nature and protected by the Constitution.

A Pennsylvania Limited Liability Partnership

California     Delaware     Florida     Nevada     New Jersey     New York     Pennsylvania

Seth Weber, Assistant U.S. Attorney
May 28, 2008
Page 2

Secondly, the production of records would constitute testimony of John Karoly as to what papers were "allegedly stored in the storage facility." The production would therefore require in effect the testimony of John Karoly as to what documents he *contends* were present in the storage facility. The government seeks, under the guise of a subpoena duces tecum, testimony from my client in this regard.

Third, you seek to compel John Karoly to gather and produce all documents and records John Karoly received from Peter Karoly between January 2006 and February 2007. This would compel John Karoly to gather and produce all records he <u>recalls</u> receiving from Peter Karoly years after they were received. The result is that John Karoly's production would be testimonial in that the production would be evidence of what documents he <u>recalls</u> receiving from Peter. The government seeks to lock a target into a position in advance of a potential indictment.

Fourth, the production of the records would establish John Karoly's possession or control of the records in question which well may have evidentiary value to your investigation. In fact, I can contemplate in a case like ours that the both the existence of certain records and the absence of other records would be argued by the government as evidence against John Karoly.

Fifth, the act of production and its implicit authentication of the records would constitute testimonial communication.

In summary, the production of records would constitute an admission as to the existence or absence of records, their possession or control, and the opinion that the documents produced are the ones described in the subpoena. These types of admissions implicitly communicate statements of fact that may lead to incriminating evidence.

I would like to explore with you whether use immunity under 18 U.S.C. 6002-3 would be offered by the government concerning these records.

Very truly yours,

Robert E. Goldman

REG:cb

DTI 810706v1 05/28/08

Seth Weber, Assistant U.S. Attorney
May 28, 2008
Page 3


bcc:   John P. Karoly, Jr.

# EXHIBIT 3

Fox Rothschild LLP
ATTORNEYS AT LAW

2700 Kelly Road, Suite 300
Warrington, PA 18976-3624
Tel 215.345.7500  Fax 215.345.7507
www.foxrothschild.com

Robert E. Goldman
Direct Dial:  (215) 918-3550
Email Address:  rgoldman@foxrothschild.com
File No. 52130.00001

June 11, 2007

**Via Facsimile @ 610-776-1184 and First Class Mail**
Seth Weber, Assistant U.S. Attorney
U.S. Department of Justice
Eastern District of Pennsylvania
504 West Hamilton St., Suite 3707
Allentown, PA 18101

Re:   **Grand Jury Matter: 07-300**

Dear Mr. Weber:

Prior to the search of John Karoly's residence and the serving of grand jury subpoenas, Dr. John Shane, the witness to the June 2006 Wills, was visited by two members of federal law enforcement. One, he identified as F.B.I. Special Agent Thomas Marakovitz.  Immediately after the approximately two hour interview, Dr. Shane told numerous individuals that the F.B.I. had told him that John Karoly and his son, J.P. Karoly, had acknowledged their involvement in preparing the fictitious 2006 Wills and had implicated him in the scheme.  In spite of that false representation, Dr. Shane continued to state to them that the 2006 Wills that he had witnessed were legitimate and existed prior to Peter Karoly and Lauren Angstadt's deaths.  Frankly, the interview ploy used was an investigative tactic that is not novel and, in fact, is commonly used by law enforcement.  In this case, however, it was a roll of the dice and the government lost.

The fact that Dr. Shane continued to represent the 2006 Wills as legitimate in the face of F.B.I. claims that the Karoly's had implicated him is exculpatory material and, in fact, will be at the heart of our defense should the grand jury return an Indictment in this case.  The false representation to Dr. Shane is significant for two reasons.  First, it supports our constant statements that this investigation is unwarranted and that your targets are not guilty of any offenses.  Dr. Shane stood steadfast in his statements that the 2006 Wills were legitimate under conditions when a guilty party would crumble. Secondly, it shows that the federal government, specifically the Justice Department, will make false representations to witnesses to get them to give a version of the facts that the government has ordained to be true.

A Pennsylvania Limited Liability Partnership

California      Delaware      Florida      Nevada      New Jersey      New York      Pennsylvania

Seth Weber, Assistant U.S. Attorney
June 11, 2007
Page 2

I would therefore ask that all rough notes made during the interview of Dr. Shane be immediately preserved, as well as all drafts of the FBI 302 of that interview. Next, this Brady material should be disclosed to the grand jury. Against my objection, Dr. Shane was paraded multiple times for maximum effect before the grand jury to assert his Fifth Amendment rights to the detriment of my client and Dr. Shane. The fact that he continued to maintain that the Wills were legitimate after the FBI told him falsely that the Karoly's gave him up, must be disclosed to the grand jury.

The foregoing is made even more problematic following last Thursday's grand jury appearance by Dr. Shane. On that date, I was advised by George Heitczman that you acknowledged that you were at the Dr. Shane interview along with SA Marakovitz. This has thrown you now into the potential role as a witness in this case if there is a return of an Indictment.[1] It presents a real and actual conflict.

There is no doubt, as I stated above, that a prominent feature of our defense would be the interview of Dr. Shane. If you remain the prosecuting attorney in this case, you will not be able to dispute the version of Dr. Shane or vouch for any contrary position taken by the F.B.I. The only possible removal of a conflict would be an acknowledgement that the misrepresentation took place. We would need, with the participation of Supervisory Assistant U.S. Attorney Peter Schenck, to see if this would remedy any potential conflict. I am not sure that it can but would be willing to explore with the government. It is essential, however, that you put a hold on your presentation of witnesses before the grand jury until this conflict issue is resolved.

Should the government not acknowledge that this misrepresentation took place, you regrettably have a conflict in continuing in presenting this case to the grand jury and, in the event of an Indictment, proceeding with the prosecution. An attorney who is a witness should not also wear the hat of investigator, prosecutor and trial attorney in the same case. If there is a dispute that the statement was made to Dr. Shane, you would also be thrust during the grand jury investigation into the position of gathering witnesses to support your future credibility as a witness.

The Third Circuit has unequivocally stated: "An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The *roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.*" Government of Virgin Islands v. Zepp, 748 F.2d 125, 138 (3d Cir. 1984). Moreover, as the government most recently argued in the Fumo prosecution, "disqualification may also be appropriate where it is based solely on a lawyer's personal knowledge of events likely to be presented at trial, even if the lawyer is unlikely to be called as a witness." United States v. Merlino, 349 F.3d 144, 152 (3d Cir. 2003). In Merlino, the Court approvingly cited the Second Circuit's explanation that: where an attorney is also a witness to a relevant act, his role as advocate may

---

[1] In light of this, I would also ask you to retain all of your rough notes taken during the interview of Dr. Shane.

DT1 198138v1 06/11/07

Seth Weber, Assistant U.S. Attorney
June 11, 2007
Page 3

give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination. <u>United States v. Locascio</u>, 6 F.3d 924, 933 (2d Cir. 1993).[2]

I do not come to this conclusion lightly. I have spent the entire weekend thinking about the issue. If you are conflicted out of this case, I believe your office may have to refer this investigation to an attorney in Main Justice to take over the grand jury investigation and bring this matter to a conclusion. Again, it is clear to me that you must stop presenting witnesses before the grand jury until this conflict issue is resolved. I look forward to discussing this matter more fully with you and Mr. Schenck.

Respectfully,

Robert E. Goldman

REG:cb

---

[2] The rules of professional conduct are largely consistent. Rule 3.7 states:

    (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
        (1) the testimony relates to an uncontested issue;
        (2) the testimony relates to the nature and value of legal services rendered in the case; or
        (3) disqualification of the lawyer would work substantial hardship on the client.

# EXHIBIT 4



**Fox Rothschild** LLP
ATTORNEYS AT LAW

2700 Kelly Road, Suite 300
Warrington, PA 18976-3624
Tel 215.345.7500 Fax 215.345.7507
www.foxrothschild.com

Robert E. Goldman
Direct Dial: (215) 918-3550
Email Address: rgoldman@foxrothschild.com
File No. 52130.00001

August 14, 2007

**Via Facsimile and First Class Mail**

Seth Weber, Assistant U.S. Attorney
U.S. Attorney's Office
Eastern District of Pennsylvania
504 West Hamilton St., Suite 3701
Allentown, PA 18101

Peter F. Schenck
Supervisory Assistant U.S. Attorney
U.S. Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street
Philadelphia, PA

**Re:     Grand Jury Matter No. 07-300**

Dear Mr. Weber:

As I attempted to discuss with you last Thursday, I was advised by Arthur Donato, Jr., Esq., counsel for Karoly Law Office employee Heather Kovacs, that he was concerned about what had had taken place that day when Ms. Kovacs appeared to testify before the grand jury and was questioned by you. It was reported to me that Ms. Kovacs left the room emotionally distressed and crying after being questioned about her child, her mother, and other personal and irrelevant matters. Obviously, I was not present for your examination but I am, nonetheless, reflecting about the potential that irrelevant and inflammatory information is being presented to the grand jury. As counsel for John Karoly, it is my duty to raise questions concerning potential grand jury abuse when they may arise.

In earlier correspondence, including a letter dated June 11, 2007, I discussed with you my concerns about your ability to continue to head the ongoing grand jury investigation while, at the same time, you placed yourself in the case as a witness based upon your appearance at Dr. Shane's residence with FBI Agent Thomas Marakavits. A copy of that letter is enclosed. As I asserted at that time, "an attorney who is also a witness should not also wear the hat of investigator, prosecutor and trial attorney in the same case. If there is a dispute . . ., you would be thrust during the grand jury investigation into the position of gathering witnesses to support your future credibility as a witness." It is equally true that you would be motivated to cast doubt on the credibility of others whose testimony is at odds with yours. Despite the concerns I raised, no action was taken by you or your office to rectify this problem. In fact, since then, you have continued to travel alone with SA Marakavits to interview individuals. Many of these potential witnesses have stated that a part of the interview process consisted of you attempting to convince them of Mr. Karoly's involvement in criminal activity. Should there be issues as to what was

A Pennsylvania Limited Liability Partnership



Fox Rothschild LLP
ATTORNEYS AT LAW

Seth Weber, U.S. Attorney
August 14, 2007
Page 2

stated during these interviews, you would be brought again into the case to dispute the recollection of the witnesses.

In addition, by prior letter dated June 6, 2007 and enclosed, I requested that you not drag before the grand jury individuals who assert their Fifth Amendment Privilege not to testify since their appearance before the body that has the power of indictment would be prejudicial to my client. Despite that request, you have had at least one key person, Dr. John Shane, required to repeatedly exercise the Fifth before the grand jury.

Now that I have spoken with Mr. Donato about the nature of your inquiry of Ms. Kovacs, I am fearful at this point that you have lost any objectivity that you may have ever had in this case. If there was an inquiry by you concerning non-existent offshore bank accounts or concocted representations of what Mr. Karoly would have received from the entity ERAD under the Will, I am also fearful that a grand jury which is presented this inflammatory, irrelevant and prejudicial material may ignore the lack of sufficient evidence to indict and nonetheless return an Indictment.

I am therefore requesting that your office ask the stenographer from the proceeding on August 9 to expedite the production of the transcript for review by Supervisory AUSA Peter Schenck. I further request that you have the stenographer preserve the audiotape of the proceeding. I will need this audiotape should a challenge to the grand jury proceedings be raised. It is requested that the review take place prior to the next session when you intend to interrogate another Karoly Law Office employee James Heidecker. From what was related to Mr. Donato by Ms. Kovacs, it appears that you have already, and will continue to, notify the grand jury that Mr. Heidecker's law license has been suspended. The relevancy of this passes me by. It appears again to be for the sole purpose of darkening the reputation of Mr. Karoly, his employer, before the grand jury.

I am making the further demand that the government instruct the stenographer to preserve all tape recordings of the grand jury proceedings in this case, including your one-on-one discussions with that body. My request includes past sessions and all future sessions.

Very truly yours,

Robert E. Goldman

REG:cb

Enclosures

DTI 202514v1 08/14/07

# EXHIBIT 5



**Fox Rothschild** LLP
ATTORNEYS AT LAW

2700 Kelly Road, Suite 300
Warrington, PA 18976-3624
Tel 215.345.7500  Fax 215.345.7507
www.foxrothschild.com

Robert E. Goldman
Direct Dial:  (215) 918-3550
Email Address:  rgoldman@foxrothschild.com
File No. 52130.00001

June 8, 2007

## Via Facsimile @ 610-776-1184 and First Class Mail
Seth Weber, Assistant U.S. Attorney
U.S. Department of Justice
Eastern District of Pennsylvania
504 West Hamilton St., Suite 3707
Allentown, PA 18101

### Re:   Grand Jury Matter: 07-300

Dear Mr. Weber:

I recently received information which I believe the F.B.I. needs to move on expeditiously.  It concerns the embezzlement of funds from the MRI Centers in North Charleston and Greenville, South Carolina that were owned by Peter Karoly.  Joanne Billman worked at the offices.  She also ran (unauthorized by Peter) her travel business from that location.  Her business is Circle B Dream Vacations.

We have learned that Peter had discovered this theft, believed that Joanne Billman was involved and was in the process of dealing with Joanne and preserving his records in South Carolina shortly before his death.

This information, if true, establishes a motive for the false information that the Caveators have supplied the government about Karoly family members in Allentown.  We believe the attack on John Karoly by Joanne Billman was an attempt to divert all attention from her activity at the MRI Centers.

I have been advised that Joanne Billman has removed credit card records of the MRI Centers from the business and taken them to her residence.  I was advised that she had used the company's money and credit cards for personal expenses, including, repairs to her vehicles, entertaining friends, purchase of residential furniture, purchases at Best Buy, plane tickets for herself, her family and Kim Luciano, and expenses for her travel business.  The cards used were American Express, Visa and Master Card.  She also permitted her husband and son to use the cards which they did, using the signature P or P Karoly.

I have also been advised that she has brought in new servers for the company's computer and that the old servers may have been removed or tampered with by attempting to delete information.

A Pennsylvania Limited Liability Partnership



Fox Rothschild LLP
ATTORNEYS AT LAW

Seth Weber, Assistant U.S. Attorney
June 8, 2007
Page 2


In addition, I have been told that Joanne Billman has used the company's money to write checks to Shelly Fischl since Peter's death

It is therefore requested that FBI immediately investigate the embezzlement at the MRI Center and preserve the computers and hard drives which were present at that location. The corporate records including the expense and credit card records need to be preserved.

In addition, I have been advised that Joanne and Kim removed material from Peter's residence. This is in addition to the material that you know went to the residence of John Karoly. Although there are indications that they may have destroyed or discarded much of the material, what still remains at Joanne's residence needs also to be recovered and preserved. The records that Joanne Billman took from the residence establishes that she had the ability to discover and remove material from Peter's residence which would have corroborated that the June 2006 Will was created by Peter.

If the information I am providing to you is correct, it is extremely important to establish. I believe that it warrants the government's reconsideration of what it believes to be the truth in this case. Since the FBI seized material from John Karoly's residence that had come from Peter Karoly's residence, the FBI should realize that there is similar evidentiary value for the documents of Peter's that were taken by Joanne Billman and Kim Karoly Luciano. To ignore these records would show an unequal application of the FBI's attention on John Karoly to the exclusion of Joanne Billman and Kim Luciano.

One final matter, I have also been advised that in the late hours on the date of Peter's death, Joanne gained access to Peter's laptop computer to delete material. This should be a focus of the government's analysis of the computer that is in your possession.

Respectfully,

Robert E. Goldman

REG:cb

DT1 197887v1 06/08/07

# EXHIBIT 6



**Fox Rothschild** LLP
ATTORNEYS AT LAW

2700 Kelly Road, Suite 300
Warrington, PA 18976-3624
Tel 215.345.7500  Fax 215.345.7507
www.foxrothschild.com

Robert E. Goldman
Direct Dial:  (215) 918-3550
Email Address:  rgoldman@foxrothschild.com
File No. 52130.00001

June 20, 2007

**<u>Via Facsimile @ 610-776-1184 and First Class Mail</u>**
Seth Weber, Assistant U.S. Attorney
U.S. Department of Justice
Eastern District of Pennsylvania
504 West Hamilton St., Suite 3707
Allentown, PA 18101

**Re:    <u>Grand Jury Matter: 07-300</u>**

Dear Mr. Weber:

I learned today that another search was conducted by the F.B.I. in connection with the ongoing
investigation.  The premises belonging to John Karoly, Jr. and Doctor John Shane have now been the
subject of searches by your agents.

We have provided you with information, and you have received it also from multiple sources, that
Jeffrey Fischl, Sherry Fischl, Joanne Billman and Kim Luciano had access to Peter Karoly's residence
after his death and removed objects from his house.  You have also learned that Mr. Fischl arranged to
have Peter Karoly's safe opened.  We also supplied you with information concerning the embezzlement
of funds from Peter's MRI Centers and the motives for some to frame John Karoly.  Yet, the government
continues to take no action to seize these relevant records.

Although the government has professed that it is being even handed in this investigation, I have yet to
see it.  I am unaware of any attempt by the government to follow up on leads that witnesses have
provided you concerning those who accuse John Karoly.  Certainly, there have been no searches
pertaining to these individuals.

A Pennsylvania Limited Liability Partnership

California        Delaware        Florida        Nevada        New Jersey        New York        Pennsylvania



Fox Rothschild LLP
ATTORNEYS AT LAW

Seth Weber, Assistant U.S. Attorney
June 20, 2007
Page 2

We simply request that the government take prompt action to secure the foregoing records and investigate those whose financial interests motivate their allegations against Mr. Karoly.

Very truly yours,

Robert E. Goldman

REG:cb

cc:    F.B.I. SA Thomas Marakovits

**EXHIBIT 7**



**Fox Rothschild** LLP
ATTORNEYS AT LAW

2700 Kelly Road, Suite 300
Warrington, PA 18976-3624
Tel 215.345.7500  Fax 215.345.7507
www.foxrothschild.com

Robert E. Goldman
Direct Dial: (215) 918-3550
Email Address: rgoldman@foxrothschild.com
File No. 52130.00001

May 25, 2007

**Via Facsimile @ 610-776-1184 and First Class Mail**
Seth Weber, Assistant U.S. Attorney
U.S. Department of Justice
Eastern District of Pennsylvania
504 West Hamilton St., Suite 3701
Allentown, PA 18101

**Re:    Grand Jury Matter**

Dear Mr. Weber:

You have subpoenaed Rebecca Karoly, the wife of John Karoly, to testify before the Grand Jury on May 31, 2007. This letter is to advise that she would exercise her spousal privilege not to testify in that proceeding. As you know, a spouse cannot, under the circumstances present in this case, be called to testify in a proceeding, the focus of which is to gather criminal evidence against the other spouse.

The U.S. Attorney's Manual provides that it would be improper to compel the person exerting the privilege to appear before the grand jury panel simply to exercise the privilege. Clearly, such a requirement would be prejudicial to the other spouse, John Karoly, the subject of the investigation.

Kindly advise me by next Tuesday, whether you accept my representation of the exercising of the privilege and either cancel or continue the appearance date to work out this issue.

Respectfully,

Robert E. Goldman

REG:cb

cc: Rebecca Karoly

DTI 197130v1 05/25/07            A Pennsylvania Limited Liability Partnership

California      Delaware      Florida      Nevada      New Jersey      New York      Pennsylvania

# EXHIBIT 8



**Fox Rothschild** LLP
ATTORNEYS AT LAW

2700 Kelly Road, Suite 300
Warrington, PA 18976-3624
Tel 215.345.7500  Fax 215.345.7507
www.foxrothschild.com

Robert E. Goldman
Direct Dial:  (215) 918-3550
Email Address:  rgoldman@foxrothschild.com
File No. 52130.00001

June 6, 2007

**Via Facsimile @ 610-776-1184 and First Class Mail**
Seth Weber, Assistant U.S. Attorney
U.S. Department of Justice
Eastern District of Pennsylvania
504 West Hamilton St., Suite 3707
Allentown, PA 18101

Re:     **Grand Jury Matter: 07-300**

Dear Mr. Weber:

It has come to my attention through counsel for Dr. John Shane, George Heitzman, that Dr. Shane intends to exercise his Fifth Amendment privilege should he be called to testify before the investigating grand jury.  My understanding is that Mr. Heitzman has informed you of this and that he would confirm this in writing to you.  I have been further advised that you are requiring that Dr. Shane to exercise his Fifth Amendment Rights in the presence of the grand jury.  From my discussions with you and what the FBI has stated to a multitude of potential witnesses in this case, it is apparent to me that the government considers Dr. Shane a "target" of the investigation as that term is defined in the U.S. Attorney's manual.

Last week, I advised you that Rebecca Karoly, the wife of John Karoly, who has also been subpoenaed to testify before the grand jury, would exercise her spousal privilege and not testify before the grand jury which is investigating allegations against her husband.  You have advised me that you would not accept this representation and that she would be required to assert her privilege before the grand jury.  From my discussions with you and what the FBI has stated to a multitude of potential witnesses in this case, it is apparent to me that the government considers John Karoly a "target" of the investigation as that term is defined in the U.S. Attorney's manual.

This letter is to state my objection to the government's requirement that these or any other subpoenaed witnesses be required to exercise their Fifth Amendment Rights or Spousal privilege before the very body that will be determining whether the evidence is sufficient to return an Indictment.  To require them to do so would prejudice my client, John Karoly, in the eyes of the grand jury even should curative

A Pennsylvania Limited Liability Partnership

California      Delaware      Florida      Nevada      New Jersey      New York      Pennsylvania



Fox Rothschild LLP
ATTORNEYS AT LAW

Seth Weber, Assistant U.S. Attorney
June 6, 2007
Page 2

instructions be provided. "The layman's natural first suggestion would probably be that the resort to privilege in each instance is a clear confession of crime.' 8 Wigmore, Evidence, 3d Ed., # 2272, p. 426.

The parading of witnesses, who are friends, associates and family members of my client, before the grand jury when you know that they will assert their privilege not to testify is extremely inflammatory conduct before the grand jury. Scores of cases highlight the extreme prejudicial nature of this procedure.

It is well settled that the jury is not entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense. Billeci v. United States, 87 U.S.App.D.C. 274, 184 F.2d 394 (1950). The rule is grounded not only in the constitutional notion that guilt may not be inferred from the exercise of the Fifth Amendment privilege but also in the danger that a witness's invoking the Fifth Amendment in the presence of the jury will have a disproportionate impact on their deliberations. "The jury may think it high courtroom drama of probative significance when a witness 'takes the Fifth.' In reality the probative value of the event is almost entirely undercut by the absence of any requirement that the witness justify his fear of incrimination and by the fact that it is a form of evidence not subject to cross-examination. Fletcher v. United States, 118 U.S.App.D.C. 137, 332 F.2d 724 (1964).

An obvious corollary to these precepts is the rule that a witness should not be put on the stand for the purpose of having him exercise his privilege before the jury. "This would only invite the jury to make an improper inference. For the same reason no valid purpose can be served by informing the jury that a witness has chosen to exercise his constitutional privilege. That fact is not one the jury is entitled to rely on in reaching its verdict." Morrison v. United States, 439 F.2d 536, C.A.D.C. (1970). See also United States v. Duran, 884 F.Supp. 573 D.D.C.,1995 (a witness should not be put on the stand for the purpose of having him exercise his privilege before the jury [as t]his would only invite the jury to make an improper inference); San Fratello v. United States, 340 F.2d 560, 565 (5th Cir.1965) (reversible error in permitting prosecution to call witness so as to require her to claim Fifth Amendment privilege in the presence of the jury); United States v. Victor, 973 F.2d 975, 979 (1st Cir.1992) (witness' refusal to answer a question, particularly in the context of cross-examination, could lead a jury to draw impermissible inferences); United States v. Vandetti, 623 F.2d 1144, 1148 (6th Cir.1980) (no right to benefit from any inferences the jury may draw from the witness' assertion of the privilege "alone or in conjunction with questions that have been put to him") (quoting United States v. Lacouture, 495 F.2d 1237 (5th Cir).



Fox Rothschild LLP
ATTORNEYS AT LAW

Seth Weber, Assistant U.S. Attorney
June 6, 2007
Page 3

Given the government plan to repeatedly put witnesses before the grand jury who have legitimate claims of privilege, the prejudice to my client is insurmountable. "When a witness claims his privilege, a natural, and indeed almost inevitable, inference arises as to what would have been his answer if he had not refused. If the prosecution knows when it puts the question that he will claim the privilege, it is charged with notice of the probable effect of his refusal upon the jury's mind. . . . Such refusals have been uniformly held not to be a permissible basis for inferring what would have been the answer, although logically they are very persuasive. How to deal with them is another matter, not easy to decide; but it is clear, not only that the presumed answer has not the sanction of an oath, but what is even more important that the accused cannot cross-examine. If they once do get before the jury, there arises, as we have said, a strong probability that they will be taken as evidentiary." United States v. Maloney, 2 Cir., 262 F.2d 535, 537 (1959); United States v. Pitts, 918 F.2d 197, 200 (D.C.Cir.1990) ( "A witness may not be put on the stand for the purpose of allowing the jury to watch him 'take the Fifth.'); United States v. Thornton, 733 F.2d 121, 125 (D.C.Cir.1984) (stating that the "right to compulsory process does not include [the] right to have the witness assert fifth amendment privilege before the jury ); United States v. Simmons, 663 F.2d 107, 108 (D.C.Cir.1979) (per curiam) ( "[A] witness has the right to exercise [the fifth amendment] privilege without taking the stand. "; United States v. Reese, 561 F.2d 894, 899 (D.C.Cir.1977) ( "[A] defendant has no right to put a witness on the stand simply to require him to assert his Fifth Amendment privilege before the jury); Coleman v. United States, 420 F.2d 616, 623-25 (D.C.Cir.1969) (finding fifth amendment violations when counsel for three codefendants were required in turn to state in open court that their clients had declined to testify).

In addition to the above, I believe that the calling of these witnesses before the grand jury to exercise their privilege not to testify violates the letter and spirit of provisions contained within the United States Attorneys Manual. The Manual provides that a target should not be called before the grand jury to exercise his Fifth Amendment rights. It is my position that the government may not get around this directive by simply reclassifying Dr. Shane as a "subject." As to Rebecca Karoly, by analogy, a spouse of a target should not be dragged before the grand jury to exercise her marital privilege.

Again, I strongly ask that you not have these witnesses assert their privileges before the grand jury. Should you still plan to do so, I request that you submit this correspondence to the supervisory Assistant United States Attorney for his/her review prior to that course of action being taken.

Respectfully,

Robert E. Goldman

REG:cb

DT1 197834v1 06/06/07